UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
TRUSTEES OF THE PAVERS AND ROAD BUILDERS
DISTRICT COUNCIL WELFARE, PENSION, AND
ANNUITY FUNDS and TRUSTEES OF THE LOCAL
1010 APPRENTICESHIP, SKILL IMPROVEMENT, AND
TRAINING FUND,

                         Plaintiffs,            **ORDER**

      -against-                      23-CV-7545-KAM-SJB

TRAC CONSTRUCTION GROUP, INC.,

                       Defendant.
---------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

## DECISION ON RECONSIDERATION

The Court is in receipt of a letter dated August 14, 2024, from Plaintiffs' counsel, ostensibly objecting to the Court's Report and Recommendation that was issued earlier today. (Letter dated Aug. 14, 2024 ("Pls.' Letter"), Dkt. No. 21). The Court interprets the objections as a motion for reconsideration,[1] and issues the attached, amended Report and Recommendation.

In its letter, Plaintiffs' counsel indicates that the Court should not have credited amounts paid by Defendant on one work project in determining how much was owed for failure to pay remittances on a separate work project. (*Id.* at 2). Notably, this distinction between work projects is entirely absent from the papers submitted by

---

[1] Although filed as an objection on ECF, the letter is, in fact, addressed to the undersigned, which is why the Court interprets it as a motion for reconsideration. And although the standard for reconsideration is strict, and should only be granted in those circumstances in which the Court has overlooked matters previously placed before the Court (which is not the case here, since new evidence appears in counsel's letter), in the interests of justice, and to avoid prejudice to Plaintiffs, the Court is reconsidering and amending its original Report and Recommendation.

Plaintiffs' counsel in connection with their original motion.  In addition, the original papers do not explain in any meaningful or coherent way any of the numbers on the spreadsheets attached to the motion.  As a result, the Court was forced to reverse engineer all of the calculations provided by Plaintiffs' counsel—which, to say the least, were unexplained, unsubstantiated in the affidavits, and included only in conclusory, summed up totals.

Just as one example, the spreadsheets attached as Docket Nos. 16-1 and 16-3 contain a panoply of codes, dollar amounts, column headings, and rote descriptors, only two of which are cursorily explained, with the rest left to imagination and guesswork.[2] The Court gave counsel the benefit of the doubt and attempted to substantiate and understand these submissions, despite their manifest deficiencies,[3] and on that basis, issued the original Report and Recommendation.

Plaintiffs' counsel now objects and contends that the Court made errors by failing to appreciate that the data provided relates to two different worksites, and argues that Defendant is not entitled to credit payments from one worksite to amounts due for another.  The letter makes this argument, without citing the relevant law, or CBA or plan provisions.

The Complaint makes no mention of worksites, but instead summarily asserts that "Trac failed to remit contributions of $60,792 . . . for the period January through

---

[2] Although these tables have 14 columns, and countless codes and abbreviations, the cover declaration only defines the "third column from the left" and "the fifth column from the left."  (Wilson Decl. ¶¶ 14–15).  To call this inside baseball is an insult to our national pastime.

[3] Another attachment is even more cryptic.  The second page of the document at Docket No. 15-6 is a spreadsheet that contains no row or column headings or titles, and just a series of unlabeled numbers and dates.

April 2020." (Compl. dated Oct. 10, 2023, Dkt. No. 1). Counsel's memorandum of law and affidavit from the Funds' administrator both state that "Defendant failed to remit contributions of $60,792 . . . to the Funds for work performed on the project 'QUEENS' for the period January through April 2020." (Mem. of Law in Supp. of Pls.' Mot. for Default J. ("Pls.' Mem. of Law"), Dkt. No. 18 at 4; Decl. of Philip Wilson ("Wilson Decl."), Dkt. No. 16 ¶¶ 9–10). But the very next page says, "Defendant remitted contributions for the periods February and March 2020," (Pls.' Mem. of Law at 5), without making any reference to the fact that this was payment for a different worksite. The natural inference of any reasonable reader would be to conclude that the payments were for the only site ever mentioned in Plaintiffs' memorandum or declarations.

Yet, one need not even rely on reasonable inferences, because both spreadsheets refer to the "QUEENS" project. The delinquency spreadsheet—which lists the payments made, but late—states payments were made to a "QUEENS/BROOKLYN" project. (Employer LD/IC Billing Status Report dated Dec. 29, 2023, attached as Ex. K to Wilson Decl., Dkt. No. 16-3). And the spreadsheet detailing the total amounts due refers to "QUEENS"[4] and has no other project name information. (Employer Discrepancy Status Report dated Dec. 29, 2023, attached as Ex. I to Wilson Decl., Dkt. No. 16-1). Given all this, it would appear that there was only one project for which defendant was responsible for making payments.

But now, counsel, in a letter, states in fact that there were two *different* projects and refers the Court to columns containing Job ID and site numbers to prove the difference. All the while, the letter suggests the Court should have understood this

_____

[4] The discrepancy report actually identifies the worksite as "QUENNS, NY."

previously unexplained fact.  If there was any error, it lies with Plaintiffs' counsel for failing to provide the necessary documentation, evidence, and support for the damages being sought in this default judgment.  That being said, the Court is loath to punish Plaintiffs themselves for the errors and omissions of counsel.  The Court therefore takes the letter submitted on August 14, 2024, as new evidence in support of a previously submitted motion.  And on the basis of this new evidence, the Court has refined its calculations in the Report and Recommendation as follows.

1) Changed the total unpaid contributions and union assessment fees owed by Defendant from $178,508.50 to $190,288.83.

2) Using $190,288.83 as the baseline for pre-judgment interest calculations, increased the interest owed from $51,269.75 to $55,398.61, and the daily interest rate from $46.29 per day to $49.35 per day.

3) Increased the liquidated damages from $16,897.52 to $17,981.05.

In addition, the Court has stricken and removed portions of the prior Report and Recommendation which refer to "giving credit" for contributions made for the JR Cruz Biowales Queens worksite.

Because the new evidence and argument contained in Plaintiffs' recent letter was not submitted in connection with their original motion, in serving this amended Report and Recommendation on Defendant, Plaintiffs' counsel must also serve this Order, as well as their letter dated August 14, 2024, on Defendant (if not previously done), and file proof of service on the docket.

SO ORDERED.

/s/ *Sanket J. Bulsara*  August 14, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TRUSTEES OF THE PAVERS AND ROAD BUILDERS
DISTRICT COUNCIL WELFARE, PENSION, AND
ANNUITY FUNDS and TRUSTEES OF THE LOCAL
1010 APPRENTICESHIP, SKILL IMPROVEMENT, AND
TRAINING FUND,

                                        Plaintiffs,                    **AMENDED
                                                                       REPORT AND
                                                                       RECOMMENDATION**
              -against-                                                 23-CV-7545-SJB

TRAC CONSTRUCTION GROUP, INC.,

                                        Defendant.
------------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

      The Trustees of the Pavers and Road Builders District Council Welfare, Pension, and Annuity Funds and the Trustees of the Local 1010 Apprenticeship, Skill Improvement, and Training Fund (collectively, "Plaintiffs" or the "Funds") commenced this action on October 10, 2023 against Trac Construction Group, Inc. ("Trac") for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA") and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), seeking to recover unpaid contributions and interest thereon, union assessment fees, late payment interest, liquidated damages, and attorney's fees and costs. (Compl. dated Oct. 10, 2023 ("Compl."), Dkt. No. 1 ¶¶ 1, 4; *id.* Prayer for Relief). Trac failed to answer or otherwise respond to the Complaint. The Clerk of Court entered a default against Trac, (Clerk's Entry of Default dated Nov. 14, 2023 ("Clerk's Entry of Default"), Dkt. No. 11), and Plaintiffs filed a motion for default judgment. (Mot. for Default J. dated Jan. 12, 2024 ("Default J. Mot."), Dkt. No. 13).

For the reasons stated below, it is respectfully recommended that Plaintiffs' motion for default judgment be granted in part and denied in part, as detailed herein.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

The Funds are employer and employee trustees of multi-employer labor-management trust funds, operated in accordance with Section 302(c) of the LMRA, 29 U.S.C. § 186(c). (Compl. ¶ 4). They administer employee benefit plans under Section 3(3) of ERISA, 29 U.S.C. § 1002(3). (*Id.*).

Trac is a New York corporation, (*id.* ¶ 5), and an employer under ERISA and the LMRA. (*Id.*). Trac entered into two collective bargaining agreements (the "CBAs") with the Highway, Road, and Street Construction Laborers Local Union 1010 (the "Union"): in August 2018, they entered into a CBA with the Union covering the period between July 1, 2017 and June 30, 2020 (the "2017–2020 CBA"); and in August 2020, they entered into a CBA with the Union covering the period between July 1, 2018 and June 30, 2021 (the "2018–2021 CBA"). (CBAs, attached as Exs. A and B to Aff. of Keith Loscalzo in Supp. of Mot. for Default J. ("Loscalzo Decl."), Dkt. No. 14-1, 14-2).

Trust Agreements which established the Funds were incorporated into the CBAs entered into by Trac. (*See* Compl. ¶ 9; Loscalzo Decl. ¶ 18. *See generally* Agreements and Decl. of Trust of Pavers & Road Builders District Council Welfare Fund as amended on Jan. 1, 2016 ("Trust Agreements"), attached as Ex. C to Decl. of Joseph Montelle in Supp. of Mot. for Default J. ("Montelle Decl."), Dkt. No. 15-1). Pursuant to Article VI of the Trust Agreements, the Funds promulgated a collection policy for delinquent fringe benefit contributions (the "Collection Policy"). (*See* Compl. ¶ 12; Montelle Decl. ¶ 7. *See generally* Policy for Collection of Delinquent Fringe Benefit Contributions ("Collection Policy"), attached as Ex. D to Montelle Decl., Dkt. No. 15-2). The Collection Policy was

incorporated into the CBAs.  (*See* Compl. ¶¶ 10–12; Mem. of Law in Supp. of Pls.' Mot. for Default J. ("Pls.' Mem. of Law"), Dkt. No. 18 at 2–3).

Under the CBAs, Trust Agreements, and Collection Policy, Trac has certain payment and recordkeeping obligations.  Trac is obligated to make benefit contributions, at rates specified in the CBAs, based on the number of hours worked by Union employees.  (*See* Compl. ¶¶ 13–14; CBAs art. IX, sec. 1).  Trac is also obligated to submit remittance reports detailing the number of hours worked by each employee.  (Compl. ¶¶ 12, 14 (explaining that the CBAs require Trac to submit such reports for "all work performed within the trade and geographic jurisdiction of the Union")).  Lastly, Trac is obligated to deduct specified Union dues (*i.e.*, union assessments) from their covered employees' paychecks and forward them to the Funds.  (*Id.* ¶ 14; *see* Loscalzo Decl. ¶¶ 15–16).

Trac was obligated to provide all benefit contributions and union assessments in one "batch," under a "one-check" system.  (Compl. ¶ 17).  These payments—and the remittance reports—were due either "on or before the 35th day following the close of the month in which the hours were worked."  (*Id.* ¶¶ 15—16).  Zenith American Solutions, Inc. ("Zenith") was hired as a third-party administrator for the Funds to monitor the payment of benefit contributions and union assessments.  (Wilson Decl. ¶¶ 3, 6–8).  Zenith monitors contribution payments and compares them to remittance reports submitted by employers to determine whether the correct amount has been paid.  (*See* Pls.' Mem. of Law at 4).

Under the Collection Policy, if an employer is "two or more months delinquent" in making contributions or submitting remittance reports to Zenith, the Funds are entitled to (1) the payment of the unpaid contributions and union assessments; (2) "late

payment interest" on the unpaid contributions, at a rate of 10% annually; (3) liquidated damages, in the amount of 10% of the unpaid contributions; and (4) attorney's fees and costs incurred.  (Compl. ¶¶ 18–21; Loscalzo Decl. ¶ 19).  If the Funds are unable to perform an audit or otherwise obtain Trac's remittance reports, they are entitled to estimate the amount of unpaid contributions, using the formula provided in the Collection Policy, for the purposes of calculating damages.  (Compl. ¶ 18; Collection Policy art. IV, ¶ 9).  The formula provides as follows:

> Where an employer is two or more months delinquent . . . the Board may project as the amount of the delinquency the greater of (a) the average of the monthly payments based on reports actually submitted by the employer for the last three (3) months for which payments and reports were submitted or (b) the average of the monthly payments based on reports actually submitted by the Employer for the last twelve (12) months for which payments and reports were submitted. . . .  The projection may be used as a determination of payments due for each delinquent month[.]

(Collection Policy art. IV, ¶ 9).

On October 10, 2023, Plaintiffs filed this suit for: (1) failure to make benefit contributions under Section 515 of ERISA, 29 U.S.C. § 1145, (Compl. ¶¶ 29–34); and (2) violation of the CBAs under Section 301 of the LMRA, (*id.* ¶¶ 35–40).  Trac was served with a summons and Complaint via the New York Secretary of State on October 12, 2023.  (Aff. of Service dated Oct. 12, 2023, Dkt. No. 5).  Despite proper service, Trac failed to appear, answer, or otherwise respond by the deadline of November 2, 2023.  Plaintiffs sought a certificate of default, (Req. for Certificate of Default dated Nov. 8, 2023, Dkt. No. 9), which was granted by the Clerk of Court.  (Clerk's Entry of Default).  Plaintiffs moved for default judgment.  (Default J. Mot.).  Trac was served with a copy of

the motion and accompanying papers at its business address,[5] in compliance with Local Civil Rule 55.2(c).  (Certificate of Service).  Trac still failed to appear or respond to the motion for default judgment.

Plaintiffs seek (1) contributions of $60,792.00 and union assessments of $3,528.78 for January through April 2020; (2) estimated contributions of $119,318.55 and union assessments of $6,649.50 for July 2020 and March through June 2021; (3) interest on the unpaid contributions at an annual rate of 10%; (4) liquidated damages of 10% of the principal amount of the unpaid contributions; (5) late payment interest on late paid contributions totaling $6,095.94; and (6) all reasonable attorney's fees and costs incurred by Plaintiffs.  (Compl. Prayer for Relief; Montelle Decl. ¶¶ 17–29).

DISCUSSION

## I.    Entry of Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment

---

[5] Plaintiffs served the default judgment motion papers on Trac at two business addresses: 103 Godwin Avenue, Unit #153, Midland Park, New Jersey, and 8016 10th Avenue, Brooklyn, New York.  (Certificate of Service dated Jan. 16, 2024 ("Certificate of Service"), Dkt. No. 19).

against that defendant.  Fed. R. Civ. P. 55(b)(2).  The Clerk of Court entered a default against Trac.  (Clerk's Entry of Default).

The next question, before reaching liability or damages, is whether Trac's conduct is sufficient to warrant entry of a default judgment.  In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001).  These factors are "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, Trac's failure to respond to the Complaint demonstrates its default was willful.  *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that the defendants' non-appearance and failure to respond "indicate willful conduct" and granting plaintiff default judgment against them).  A summons and a copy of the Complaint were served via the Secretary of State of New York on October 12, 2023.  (Aff. of Service dated Oct. 13, 2023, Dkt. No. 6).  The motion for default judgment and supporting papers were also served on Trac via certified mail to Trac's last known business address.  (Certificate of Service).  Notwithstanding this notice and service, Trac did not respond to the Complaint, did not appear, and has not in any way attempted to defend itself.

As to the second factor, the Court cannot conclude there is any meritorious defense to Plaintiffs' allegations because Trac did not appear and no defense has been

presented to the Court.  *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1.

Third, Plaintiffs would be prejudiced if the motion for default judgment is denied, "as there are no additional steps available to secure relief in this Court."  *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Order (Jan. 26, 2009); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

As a result, all three factors weigh in favor of the entry of default judgment.  The Court now turns to the liability imposed, damages, and other relief to be awarded.

II.   <u>Liability</u>

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiffs'] factual allegations as true and draw all reasonable inferences in [their] favor."  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  *LaBarbera v. ASTC Lab'ys Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R.

Miller et al., *Federal Practice and Procedure* § 2688.1 (3d ed. 2017).  "Only after the district court is convinced that the facts meet the elements of the relevant cause of action—whether those facts are established by well-pleaded allegations or proven by admissible evidence—may the district court enter a default judgment."  *Henry v. Oluwole*, No. 21-CV-2468, 2024 U.S. App. LEXIS 17218, at *20 (2d Cir. July 15, 2024).

    A.    <u>Violation of Section 515 of ERISA</u>

    Plaintiffs have established that Trac violated ERISA because of Trac's failure to make contributions as required by the agreements, including the CBAs and Collection Policy.  Section 515 of ERISA requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms . . . of a collectively bargained agreement shall . . . make such contributions."  29 U.S.C. § 1145; *see also Flanagan v. Marco Martelli Assocs., Inc.*, No. 13-CV-6023, 2015 WL 1042279, at *8 (E.D.N.Y. Mar. 9, 2015) (noting that, under Section 515, "employers are required to pay fringe benefit contributions pursuant to an effective collective bargaining agreement").  Trustees of a plan may, pursuant to Section 502, bring an action to enforce this requirement.  *See* 29 U.S.C. § 1132(a)(3); *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 313–14 (2d Cir. 1990).

    To establish a violation of Section 515, the Plaintiffs must show that Trac (1) is an employer; (2) is bound by a CBA that required payment of contributions; and (3) failed to make those contributions.  *See, e.g.*, *Health & Welfare Fund of the United Food & Com. Workers Loc. 2013 v. Precision Abstract, LLC*, No. 16-CV-4690, 2017 WL 4325713, at *3 (E.D.N.Y. May 19, 2017), *report and recommendation adopted*, 2017 WL 4296740, at *1 (Sept. 26, 2017).  Trac is alleged to be an employer within the meaning of

ERISA, (Compl. ¶ 5), and the Funds are alleged to be employee benefit plans as defined by ERISA. (*Id.* ¶ 4).

Plaintiffs allege that the CBAs obligated Trac to make benefit contributions, which it failed to do, from January through April 2020, for July 2020, and from March through June 2021. (*Id.* ¶ 28). This is sufficient to demonstrate a violation of Section 515. *See, e.g.*, *Trs. of the Loc. 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.*, No. 16-CV-318, 2018 WL 4268907, at *3–*4 (E.D.N.Y. Aug. 8, 2018), *report and recommendation adopted*, 2018 WL 4266038, at *1 (Sept. 5, 2018); *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582, 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011) (recommending that the employer's failure to make contributions to employee-benefit funds pursuant to a collective-bargaining agreement "constitutes a violation of ERISA"), *report and recommendation adopted*, 2011 WL 5402898, at *1 (Nov. 4, 2011); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) ("The allegations in plaintiff's complaint establish the elements of liability required to state a claim under section 515 of ERISA. . . . Plaintiff alleges that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the ERISA Plans and that defendant failed to make such contributions.") (adopting report and recommendation).

   B.   Breach of the CBAs Under LMRA

As noted above, a breach of a CBA is a claim under Section 301 of the LMRA. The CBAs that Trac entered into obligated it to remit specified benefit contributions to the Funds on behalf of its employees. (Compl. ¶ 13). Plaintiffs allege that Trac failed to make contributions for the period of January through April 2020, July 2020, and March through June 2021. (*Id.* ¶ 28). These breaches give rise to Section 301 liability. *See,*

*e.g.*, *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D v. Genrus Corp.*, No. 20-CV-4980, 2021 WL 4755704, at *2 (E.D.N.Y. Aug. 16, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 3928952, at *2 (Sept. 2, 2021); *Gesualdi v. D & E Top Soil & Trucking, Inc.*, No. 11-CV-5938, 2013 WL 1729269, at *3 (E.D.N.Y. Mar. 26, 2013) (finding, on a motion for default judgment, that defendant's "failure to pay contributions when they were due in breach of the CBA . . . violates section 301(a) of the LMRA").

III.    Damages and Other Relief

        "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158.  "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (citations and quotations omitted).  "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1992)).  "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (collecting cases).  Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount of damages

"as long as it ensured that there was a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

A.      Unpaid Contributions

A plaintiff who has established liability under Section 515 of ERISA is entitled to an award of: "(1) the amount of unpaid contributions, (2) interest on the unpaid contributions, (3) liquidated damages, (4) reasonable attorney's fees and costs, and (5) such other legal and equitable relief as the court deems appropriate." *Lanzafame v. Toquir Contracting, Inc.*, 545 F. Supp. 2d 255, 259 (E.D.N.Y. 2007) (citing 29 U.S.C. § 1132(g)(2)); *see also Iron Workers Dist. Council of W.N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1505–08 (2d Cir. 1995). Plaintiffs are also entitled, pursuant to Section 301 of the LMRA, to the unpaid contributions not covered by ERISA but unpaid or paid late in violation of the CBAs or other agreements. *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C, 15D v. A.G. Constr. Corp.*, No. 13-CV-3590, 2014 WL 354647, at \*3 (E.D.N.Y. Jan. 31, 2014) (adopting report and recommendation) (collecting cases).

Plaintiffs provided a contribution discrepancy report ("Discrepancy Report") generated by Zenith on behalf of the Funds. (*See* Employer Discrepancy Status Report dated Dec. 29, 2023 ("Discrepancy Report"), attached as Ex. I to Wilson Decl., Dkt. No. 16-1).

1.      Remittance Period of January to April 2020

According to the Discrepancy Report, Trac failed to remit benefit contributions of $16,435.66 for January 2020, $22,296.45 for February 2020, $21,457.75 for March 2020, and $602.14 for April 2020. (*See* Discrepancy Report at 1–2; *see also* Interest &

Liquidated Damages Calculations ("Interest Calculations"), attached as Ex. H to Montelle Decl., Dkt. No. 15-6 at 2).  Trac also failed to pay union assessment fees of $955.02 for January 2020, $1,293.76 for February 2020, $1,245.00 for March 2020, and $35.00 for April 2020.  (Discrepancy Report at 1–2; Interest Calculations at 2).  This brings the total amount of unpaid contributions for the period of January through April 2020 to $60,792.00 and the total amount of union assessment fees to $3,528.78.

Thus, for January through April 2020, the Court recommends awarding $60,792.00 in benefit contributions and $3,528.78 in union assessment fees.  *See, e.g.*, *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D v. Coastal Env't Grp. Inc.*, No. 18-CV-5791, 2019 WL 5693916, at *6 (E.D.N.Y. Aug. 30, 2019) (recommending an award of the total delinquent contributions requested after "independently calculat[ing] and confirm[ing] the amounts due based on hours worked and rates provided by the Wage Scale Schedules" supplied by the plaintiffs), *report and recommendation adopted*, Order (Mar. 31, 2020).

2.    Remittance Period of July 2020 and March to June 2021

For the periods of July 2020 and March through June 2021, Plaintiffs provided an estimation of unpaid contributions and union assessment fees.  (*See* Estimation Calculation Re: Estimated Amounts ("Estimated Calculations"), attached as Ex. F to Montelle Decl., Dkt. No. 15-4).  Trac failed to submit remittance reports for these months.  (Compl. ¶ 26; Wilson Decl. ¶ 11; *see* Delinquent Employers Report dated Jan. 2, 2024, attached as Ex. J to Wilson Decl., Dkt. No. 16-2).  In the absence of remittance reports, Plaintiffs are permitted to estimate the amount of unpaid contributions and union assessment fees, using the formula outlined in the Collection Policy.  (*See*

Collection Policy art. IV, ¶ 9).  Pursuant to that formula, Plaintiffs first determined the total amount of contributions and union assessments for the 12 months immediately prior to each month.  (Montelle Decl. ¶¶ 17–18).  The Funds then compared the 12-month average to the 3-month average, and, as permitted by the Collection Policy, opted to utilize the higher of those two averages, the 12-month average ($25,193.57).  (*Id.* ¶ 19 & nn.3–4).  The Funds estimated the number of hours worked for the delinquent period by taking the 12-month average and dividing it by the total benefit rate ($47.36).  (*Id.* ¶¶ 20–22; *see* Rate Sheets, attached as Ex. G to Montelle Decl., Dkt. No. 15-5).  In sum, based on the 12-month average, Trac is liable for 531.96 hours per month for July 2020 and March through June 2021.  (Montelle Decl. ¶ 22).  By multiplying the number of hours per month by the benefit rates for each fund, the Funds determined the average contributions due to each fund per month for this period.  (*Id.* ¶ 23).  These calculations lead to the following totals: $23,863.71 in unpaid contributions and $1,329.90 in union assessment fees per month, totaling $119,318.55 in unpaid contributions and $6,649.50 in union assessment fees for July 2020 and March to June 2021.  (*Id.* ¶ 28; *see generally* Estimated Calculations at 1).

Having verified Plaintiffs' calculations, (Estimated Calculations at 1), and having no basis to conclude that the underlying rates or days worked are incorrect, for the period of July 2020 and March to June 2021, the Court recommends awarding $119,318.55 in unpaid contributions and $6,649.50 in union assessment fees.

B.    Interest

Plaintiffs also seek two types of interest: (1) interest on the unpaid contributions, as provided for by ERISA, at an annual rate of 10%, totaling $55,398.61; and (2) late payment interest on the unpaid contributions, pursuant to the CBAs, for the periods of

18

February through March 2020, June 2020, August 2020 through January 2021, and July 2021, also at an annual rate of 10%, totaling $6,095.94.  (Pls.' Mem. of Law at 10–11; *see* Employer LD/IC Billing Status Report dated Dec. 29, 2023 ("LPI Report"), attached as Ex. K to Wilson Decl., Dkt. No. 16-3).

"ERISA entitles Plaintiff[s] to interest on all ERISA [c]ontributions that were unpaid at the time the complaint was filed, as well as those that accrued while the lawsuit was pending."  *Finkel v. Detore Elec. Constr. Co.*, No. 11-CV-814, 2012 WL 1077796, at *8 (E.D.N.Y. Mar. 6, 2012) (citing 29 U.S.C. § 1132(g)(2)(B)), *report and recommendation adopted*, 2012 WL 1078470, at *1 (Mar. 30, 2012).  Those terms impose liability on Trac for the unpaid ERISA contributions at an annual rate of 10%, calculated from the due date.  (Collection Policy art. II, ¶ 5).  Plaintiffs calculated the applicable interest from the date that each month's contribution was due through January 12, 2024.  (*See* Montelle Decl. ¶ 31; *see also* Interest Calculations at 1).  They seek $22,888.27 in interest for the periods of January through April 2020, and $32,510.34 in estimated interest for the periods of July 2020 and March through June 2021.  (Montelle Decl. ¶¶ 31, 35).  The Court's independent calculations for this period are summarized in the chart below.

| Month | Due Date | Interest Through | Unpaid Contributions | Daily Interest (at 10%) | Days Late | Total Interest |
|---|---|---|---|---|---|---|
| January 31, 2020 | March 6, 2020 | January 12, 2024 | $16,435.66 | $4.50 | 1407 | $6,331.50 |
| February 28, 2020 | April 3, 2020 | January 12, 2024 | $22,296.45 | $6.11 | 1379 | $8,425.69 |
| March 31, 2020 | May 5, 2020 | January 12, 2024 | $21,457.75 | $5.88 | 1347 | $7,920.36 |
| April 30, 2020 | June 4, 2020 | January 12, 2024 | $602.14 | $0.16 | 1317 | $210.72 |
| | | | | | **TOTAL** | $22,888.27 |

Plaintiffs' calculations for the interest on the estimated unpaid contributions for July 2020 and March through June 2021, (*see* Estimated Calculations at 2), are correct:  Plaintiffs are owed $32,510.34 in interest for those unpaid contributions.  The Court

therefore recommends that Plaintiffs be awarded a total of $55,398.61 in pre-judgment interest. *See, e.g.*, *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. Focus Constr. Grp., Inc.*, No. 23-CV-1710, 2023 WL 7687844, at *3 (E.D.N.Y. Oct. 10, 2023).

Plaintiffs are also entitled to interest on contributions that were paid late but in full, specifically those for February through March 2020, June 2020, August 2020 through January 2021, and July 2021. (Pls.' Mem. of Law at 10–11). Section 301(a) of the LMRA allows for the recovery of interest regarding late payments of contributions in violation of the terms of a CBA. *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D, AFL-CIO v. A.G. Constr. Corp.*, No. 13-CV-3590, 2014 WL 354647, at *4 (E.D.N.Y. Jan. 31, 2014) (adopting report and recommendation). Pursuant to the terms of the Collection Policy and the CBAs, Trac is liable for 10% annual interest on "delinquent" contributions. (Collection Policy art. II, ¶ 5; Wilson Decl. ¶ 13). Data on late payments of contributions made by Trac, and the interest due thereon, were kept contemporaneously by Zenith. (Wilson Decl. ¶ 16). Plaintiffs calculated this interest based on the number of days between when each month's contributions were due and when they were eventually paid. (*Id.* ¶ 18). For these months, the principal amounts to which the 10% late payment interest is applied are the total amount of contributions that were due (and eventually paid) by Trac. Thus, Plaintiffs are owed $6,095.94 in late payment interest.

The Court recommends that Plaintiffs be awarded $6,095.94 in late payment interest.

C.    <u>Liquidated Damages</u>

Plaintiffs also seek liquidated damages.  (Pls.' Mem. of Law at 10; Interest Calculations at 1; Estimated Calculations at 1).  "Section 502 of ERISA provides for liquidated damages . . . as provided in the collective bargaining and trust agreements." *Sullivan*, 2011 WL 5401987, at *6; *see* 29 U.S.C. § 1132(g)(2)(C).  The same is true under the CBAs and the Collection Policy.  (CBAs art. IX, sec. 5(c); Collection Policy art. II, ¶ 5 ("Employers shall be liable for . . . liquidated damages of ten percent (10%) of the amount of delinquent [c]ontributions[.]")).  Ten percent of the unpaid contributions awarded for January through April 2020 ($60,792.00) is $6,049.20; and 10% of the unpaid contributions for July 2020 and March through June 2021 ($119,318.55) is $11,931.85.  Thus, the Court recommends that Plaintiffs be awarded $17,981.05 in liquidated damages.  *See, e.g.*, *Finkel v. INS Elec. Servs. Inc.*, No. 06-CV-4862, 2008 WL 941482, at *9 (E.D.N.Y. Apr. 4, 2008) (awarding liquidated damages under a CBA) (adopting report and recommendation).

D.    <u>Attorney's Fees and Costs</u>

Plaintiffs seek an award of attorney's fees and costs incurred to date.  (Pls.' Mem. of Law at 12).  Plaintiffs seek $4,489.30 in attorney's fees for 16 hours of work on the case.  (Grancio Decl. ¶ 16; Professional Services Invoice ("Att'y Invoice"), attached as Ex. Q to Grancio Decl., Dkt. No. 17-5).

Pursuant to Section 502 of ERISA, where an action is brought by a fiduciary to enforce Section 515 of ERISA, the court "shall award . . . reasonable attorney's fees . . . to be paid by the defendant."  29 U.S.C. § 1132(g)(2)(D).  The Trust Agreements and Collection Policy also provide for attorney's fees if the Funds must litigate to enforce payment obligations.  (*See* CBAs art. IX, sec. 5(b); Collection Policy art. II, ¶ 5

("Employers shall be liable for . . . in the event a legal action is commenced, all costs including, but not limited to, . . . attorneys' fees, disbursements and court costs.")).

In assessing whether legal fees are reasonable, a court must determine the "presumptively reasonable fee" for an attorney's services by examining what a reasonable client would be willing to pay. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008).  To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed.  *Id.*  The next step is to determine the reasonableness of the hours expended by counsel.  *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *4–*5 (E.D.N.Y. Feb. 26, 2007), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 21770, at *3 (Mar. 19, 2008).  The number of hours spent on a lawsuit are considered unreasonable if they are "excessive, redundant, or otherwise unnecessary."  *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (adopting report and recommendation) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

Turning first to the reasonable hourly rate, the Court examines the experience and qualifications of counsel seeking the fee award.  In her affidavit, Plaintiffs' counsel Adrianna R. Grancio states that she is a 2016 graduate of St. John's University School of Law and is a partner at her firm.  (Grancio Decl. ¶ 12).  She has handled several ERISA collection actions since joining the firm.  (*Id.*).  Her regular hourly billing rate is $290.  (*Id.*).  Co-counsel Jayden Peters is a 2021 graduate of Widener University Commonwealth Law School and is an associate at the firm.  (*Id.* ¶ 13).  He also had experience as a legal assistant at the firm.  (*Id.*).  His regular hourly billing rate is also

$290.  (*Id.*).  Finally, two legal assistants (Eva Keating and Abigail Frankel) worked on this matter, and they were billed at an hourly rate of $115.  (Grancio Decl. ¶ 14 & n.1).

In ERISA matters, courts in the Eastern District of New York have approved hourly rates of $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals.  *E.g.*, *Trs. of the Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Coop. Funds v. Northcoast Maint. Corp.*, No. 17-CV-5072, 2018 WL 2471201, at *4 (E.D.N.Y. May 4, 2018).  As such, the Court finds that the rate of $290 for both Ms. Grancio and Mr. Peters is reasonable.  However, counsel failed to provide any information about the experience and skill of the two legal assistants who also worked on this matter, and thus, they have provided no compelling justification to award an hourly rate higher than that typically given to paralegals in other cases.  *See, e.g.*, *ACE Ltd. v. CIGNA Corp.*, No. 00-CV-9423, 2001 WL 1286247, at *6 (S.D.N.Y. Oct. 22, 2001) ("CIGNA's failure to produce adequate information regarding its attorneys' and paraprofessionals' rates alone justifies a reduction in fees.") (collecting cases).  Thus, the Court recommends that Ms. Keating's and Ms. Frankel's hourly rates be lowered to $70.

Turning next to the reasonableness of the time expended, according to the billing records submitted, counsel spent a total of 16 hours drafting and filing the complaint and motion for default judgment.  Contemporaneous billing records are required for a court to award attorney's fees.  *See Daniello v. Planned Sys. Integration Ltd.*, No. 07-CV-1729, 2009 WL 2160536, at *6 (E.D.N.Y. July 17, 2009) ("This Circuit requires contemporaneous billing records for each attorney, documenting the date, the hours expended, and the nature of the work.").  Counsel's hours were documented contemporaneously.  (Grancio Decl. ¶ 11).  Sixteen hours expended for an ERISA default

judgment case is reasonable. *See, e.g.*, *Trs. of the Pavers v. Regimental Contracting, LLC*, No. 22-CV-3757, 2023 WL 2969471, at *6 (E.D.N.Y. Feb. 27, 2023) (finding it reasonable that counsel devoted 20.2 hours to the case) (collecting cases), *report and recommendation adopted*, Order (Oct. 19, 2023); *see also Gesualdi v. Fortunata Carting, Inc.*, 5 F. Supp. 3d 262, 281 (E.D.N.Y. 2014) ("Courts have found that 25 hours is a typical amount of time to spend on a straightforward ERISA default case."). As such, the Court finds the hours expended to be reasonable.

The Court thus respectfully recommends that Plaintiffs be awarded $3,870.00 in attorney's fees.

In addition, Plaintiffs seek reimbursement for $500.79 in costs and expenses incurred to date, including $402 in court filing fees and $98.79 in service of process fees. (Grancio Decl. ¶ 18; Invoice for Professional Services ("Costs Invoice"), attached as Ex. R to Grancio Decl., Dkt. No. 17-6). ERISA provides that "[a]n award of reasonable costs is mandatory in a successful action to recover delinquent contributions." *Detore Elec. Constr. Co.*, 2012 WL 1077796, at *12; *see also* 29 U.S.C. § 1132(g)(2)(D). Recoverable costs include "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." *Detore Elec. Constr. Co.*, 2012 WL 1077796, at *12 (alteration in original) (quoting *Trs. of the Road Carriers Loc. 707 Welfare Fund v. Goldberg*, No. 08-CV-884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009) (adopting report and recommendation)). Plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008).

Filing fees are recoverable without supporting documentation if verified by the docket. *E.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at

*2 (E.D.N.Y. Mar. 7, 2013) (adopting report and recommendation in part); *Philpot v. Music Times LLC*, No. 16-CV-1277, 2017 WL 9538900, at *11 (S.D.N.Y. Mar. 29, 2017) (stating that the filing fee is "a fact of which the Court can take judicial notice"), *report and recommendation adopted*, 2017 WL 1906902, at *2 (May 9, 2017).  Since the docket indicates that the $402 filing fee was paid, (*see* Dkt. No. 1), the filing fee should be awarded.

Process server fees are also recoverable, but they must be supported by documentation.  *See Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at *29 (E.D.N.Y. Sept. 22, 2017) (recommending that the plaintiffs not be awarded process server fees absent supporting documentation and noting that "failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery"), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 174714, at *1 (Oct. 18, 2017); *Sheldon v. Plot Com.*, No. 15-CV-5885, 2016 WL 5107072, at *20 (E.D.N.Y. Aug. 26, 2016) (recommending costs for serving defendant "be denied due to lack of adequate documentation"), *report and recommendation adopted*, 2016 WL 5107058, at *1 (Sept. 19, 2016).  Plaintiffs provided an invoice indicating the cost of service of the summons and Complaint was $78.00.  (Costs Invoice at 1).  Plaintiffs also provided documentation of the cost of postage in serving letters and the Court's orders on Trac, which total $20.79.  (Att'y Invoice at 4).  The Court finds it appropriate to award these costs.

Therefore, the Court respectfully recommends that Plaintiffs be awarded $500.79 in costs.

E.    <u>Post-Judgment Interest</u>

Plaintiffs seek an award of post-judgment interest at the statutory rate.  The Second Circuit has recognized that "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."  *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (quoting 28 U.S.C. § 1961(a)).  "The post-judgment interest rate in an ERISA action is tied 'to the weekly average 1-year constant maturity Treasury yield . . . for the week preceding the date of judgment.'"  *Genworth Life & Health Ins. Co. v. Beverly*, 547 F. Supp. 2d 186, 190 (N.D.N.Y. 2008) (alteration in original) (quoting 28 U.S.C. § 1961(a)).  The Court therefore recommends post-judgment interest be granted on the total award, at the rate set forth in 28 U.S.C. § 1961, calculated from the date on which the Clerk of Court enters final judgment until the date of payment.

<u>CONCLUSION</u>

For the reasons stated, it is respectfully recommended that a default judgment be entered against Trac, and that Plaintiffs be awarded:

- $190,288.83 in unpaid contributions and union assessment fees;

- $55,398.61 in pre-judgment interest;

- $6,095.94 in late payment interest;

- $17,981.05 in liquidated damages;

- Pre-judgment interest in the amount of $49.35 per day between January 12, 2024 and the day judgment is entered;

- Post-judgment interest in an amount to be calculated by the Clerk of Court pursuant to 28 U.S.C. § 1961(a);

- $3,870.00 in attorney's fees; and

26

- $500.79 in costs.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

Plaintiffs are directed to serve a copy of this Report and Recommendation on Trac and file proof of such service on the docket.

SO ORDERED.

*/s/ Sanket J. Bulsara*  August 14, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York